**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
bk@wildelaw.com
Fax: 702 258-8787
and
MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

Electronically Filed on _____

Wells Fargo Bank, N.A.
08-72556

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-05-12090-mkn |
| Shirley Mae Robinson | Date: 7/24/09<br>Time: 1:30pm |
| Debtor. | Chapter 13 |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1.    That on or about March 22, 2005, the above named Debtors filed their current Chapter 13 Petition in Bankruptcy with the Court.

2.    Secured Creditor is the current payee of a promissory note dated August 7, 1996 in the principal sum of $48,350.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of

same date ("Trust Deed" herein) upon property generally described as 3114 Chadford Pl., Las Vegas,

NV 89102, and legally described as follows:

> LOT EIGHT ( 8 ) IN BLOCK TWO ( 2 ) OF BRADFORD PLACE UNIT NO. 1 AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS. PAGE 63. IN THE OFFICE OF THB COUNTY RECORDER OF CLARK COUNTY. NEVADA.

("subject property" herein).

    3.    Secured Creditor is informed and believes, and, based upon such information and belief,

alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is

in default of the loan obligations.

    4.    With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $39,676.30 |
| 5 Monthly Payments at $430.99 (February 1, 2009-June 1, 2009) | $2,154.95 |
| Accrued Late Charges | $ 281.07 |
| Motion Filing Fee | $ 150.00 |
| Attorneys Fees | $ 750.00 |
| Total Arrearages | $3,336.02 |

Furthermore, a payment becomes due on July 1, 2009 and on the first (1st) day of every month

thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the

date the monthly payment is due.

    5.    Movant is informed and believes and therefore alleges that the Debtor and bankruptcy

estate have insufficient equity in the property.  The fair market value of the property pursuant to Debtor's

Schedule "A" is $83,000.00, less ten percent (10%) cost of marketing, less the first secured lien resulting

in insufficient equity.  Therefore, secured creditor is not adequately protected.  A true and correct copy of

the Debtor's Schedule "A" is attached hereto as Exhibit "A".

    6.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with

respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish

the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

    7.    Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8.     Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.     Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10.    Rick A. Yarnall has been appointed by this Court the Chapter 13 Trustee in this instant Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein, Debtor holds title to the subject property in that capacity. To the extent the relief sought herein is granted, Respondent, Rick A. Yarnall, Trustee, is bound any such judgment.

11.    This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

12.    Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1)     For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)     For a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order for relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED ___6/22/09___.

**WILDE & ASSOCIATES**

By_____ #10235

**GREGORY L. WILDE, ESQ.**
Attorney for Secured Creditor
208 South Jones Boulevard
Las Vegas, Nevada 89107

9-0907.00703

WHEN RECORDED MAIL TO:

NORWEST MORTGAGE, INC.
3601 MINNESOTA DRIVE
BLOOMINGTON, MN  55435

LOAN NUMBER: 7352889
BRANCH:     LSV-8

96-29-7916          (13)

─────────────────────── [Space Above This Line For Recording Data] ───────────────────────

State of Nevada

# DEED OF TRUST

FHA Case No.
332-2812469-703

THIS DEED OF TRUST ("Security Instrument") is made on        AUGUST 05        , 1996        .
The Grantor is
SHIRLEY M. ROBINSON, AN UNMARRIED WOMAN

("Borrower"). The trustee is  STAN-SHAW CORPORATION, A CALIFORNIA CORPORATION

("Trustee"). The beneficiary is
NORWEST MORTGAGE, INC.,
A CALIFORNIA CORPORATION
which is organized and existing under the laws of        CALIFORNIA                , and whose
address is 405 S.W. 5TH STREET, DES MOINES, IA  50328                        ("Lender").
Borrower owes Lender the principal sum of
FORTY EIGHT THOUSAND THREE HUNDRED FIFTY AND NO/100

Dollars (U.S. $    48,350.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on        AUGUST 01, 2026        . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in            CLARK                            County, Nevada:
LOT EIGHT (8) IN BLOCK TWO (2) OF BRADFORD PLACE UNIT NO. 1, AS SHOWN
BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 63, IN THE OFFICE OF
THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

which has the address of          3114 CHADFORD PLACE
.                                                      [Street]

LAS VEGAS                    NEVADA          89102
[City]                             [State]          [Zip Code]

("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such items, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and

(c)

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale to the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S.
$ Maximum amount authorized by HUD.

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Adjustable Rate Rider          ☐ Growing Equity Rider
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider        ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____

_____ (Seal)        _____ (Seal)
SHIRLEY M. ROBINSON          -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                      -Borrower

                                                           *(Sign Original Only)*

STATE OF NEVADA,
County of          Clark
         This instrument was acknowledged before me on          8-5-96                          by

SHIRLEY M. ROBINSON


(Seal, if any):

                                          My Commission Expires:  11-8-97  _____

FHA Case No.
332-2812469-703

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          5TH          day
of          AUGUST          , 19 96     , and is incorporated into and shall be deemed to amend
and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note to
HONNEST MORTGAGE, INC.,
A CALIFORNIA CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:
3114 CRADFORD PLACE
LAS VEGAS, NV 89102

[Property Address]

The Property is a part of a planned unit development ("PUD") known as

BRADFORD PLACE UNIT NO. 1
[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree as follows:

A.    So long as the Owners' Association (or equivalent entity holding title to common areas and facilities),
acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master"
or "blanket" policy insuring the property located in the PUD, including all improvements now existing
or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides
insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire
and other hazards included within the term "extended coverage," and loss by flood, to the extent required
by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the
monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance    on
the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain
hazard insurance  coverage on the Property is deemed satisfied to the extent that the required coverage is
provided by the  Owners' Association policy. Borrower shall give Lender prompt notice of any lapse in
required hazard  insurance coverage and of any loss occurring from a hazard. In the event of a distribution
of hazard  insurance proceeds in lieu of restoration or repair following a loss to the Property or to common
areas  and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to
Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity
legally entitled thereto.

FHA Multistate PUD Rider   2/91
LOAN NUMBER:    7352809 LSV-B                    Page 1 of 2                    D-6163-1 (04/96)



B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)                    _____ (Seal)
SHIRLEY M. ROBINSON                        -Borrower                                                        -Borrower

_____ (Seal)                    _____ (Seal)
                                                   -Borrower                                                        -Borrower

_____ (Seal)                    _____ (Seal)
                                                   -Borrower                                                        -Borrower

FHA Multistate PUD Rider    2/91
LOAN NUMBER: 7352889  LSV-8                    Page 2 of 2                    D-6163-3 (04/95)

FHA Case No. 332-2812469-703

## TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is made this __5TH__ day of AUGUST __, 19_96_, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

NORWEST MORTGAGE, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to amend Paragraph 9 of the Model Mortgage Form, entitled 'Grounds for Acceleration of Debt' by adding additional grounds for acceleration as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a) All or part of the Property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

(i) Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

(ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

(iii) At an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv) Who has a gross family income in excess of the applicable percentage of applicable median family income as provided in Section 143(f) and (i)(2) of the Internal Revenue Code; or

(b) Borrower fails to occupy the property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider, or

(c) Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulation.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

_____                    _____
              Borrower                                             Borrower

SHIRLEY N. ROBINSON

CRU'.840                                    Exhibit JLG                    Addendum for
Revised 04/15/92                                                          FHA loans

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF
OLD REPUBLIC TITLE COMPANY OF NE
08-07-96    10:03    DB:    12
OFFICIAL RECORDS
BOOK    960807 INST    00700
FEE    18.00 RPTT:    .00

PREPARED BY AND WHEN RECORDED MAIL TO:

NORWEST MORTGAGE, INC.
3601 MINNESOTA DRIVE
BLOOMINGTON, MN  55435

Loan Number:
Branch:
Title Order No:
Escrow No: 96-16-1746 E/W

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Corporation Assignment of Deed of Trust or Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
NEVADA HOUSING DIVISION
all beneficial interest under that certain Deed of Trust/Mortgage dated        AUGUST 5, 1996        executed by

NORWEST MORTGAGE, INC.

, Trustor/Grantor/Mortgagor,

to STAN-SHAW CORPORATION, A CALIFORNIA CORPORATION

, Trustee/Lender,

and recorded as Instrument No. 00708 ·        on 8·7·96 ·        in book 960708 . page
, of Official Records in the County Recorder's office of        CLARK        County,
NEVADA        , describing land therein as:

LOT EIGHT (8) IN BLOCK TWO (2) OF BRADFORD PLACE UNIT NO. 1, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 63, IN THE OFFICE OF THE
COUNTY RECORDER OF CLARK COUNTY, NEVADA.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest,
and all rights accrued or to accrue under said Deed of Trust/Mortgage.

NORWEST MORTGAGE, INC.
A CALIFORNIA CORPORATION

STATE OF NEVADA,
County of    CLARK

Ron  Hudson

This instrument was acknowledged before me on
RON HUDSON

AUGUST 5        , 1996        , by

CAROL B WHITEAKER
Notary Public - Nevada
Clark County
My appt. exp. May 23, 1999

(Signature of Notarial Officer)

(Seal, if any)

NOTARY PUBLIC
(Title and Rank)

My Commission Expires: _____ 5/23/99

Corporation Assignment Nevada (Intervention)        D-SS24-1 (10/95)

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:

OLD REPUBLIC TITLE COMPANY OF NE
08-07-96   10:03   DB1        1
OFFICIAL RECORDS
BOOK   960807 INST   00701
FEE.   7.00 RPTT.        .00

*00072526408000000150*

Record & Return to:

NORWEST MORTGAGE, INC.
600 LASALLE AVE
SUITE 1000
MINNEAPOLIS, MN 55402



THIS CORRECTIVE ASSIGNMENT REPLACES THE ASSIGNMENT RECORDED ON 8-7-96
BOOK 960807 INST: 00701 TO RE-RECORD CONCURRENTLY WITH THE DEED.

## NORWEST MORTGAGE, INC.

Assignment of Mortgage /
Deed of Trust /
Deed to Secure Debt

| Pool #: | NHD X | LPO #: 2895 | Loan #: 7352889 |

For value received, Norwest Mortgage, Inc., a California corporation, formerly known as Norwest Mortgage
Inc, a Minnesota corporation, by merger and name change hereby sells, assigns and transfers to

NEVADA HOUSING DIVISION

its successors and assigns, all its right, title and interest in and to a certain mortgage / deed of trust / deed to
secure debt executed by SHIRLEY M. ROBINSON, AN UNMARRIED WOMAN

To NORWEST MORTGAGE, INC.

and bearing the date the   5   day of   AUGUST   A.D. 19  96   and
recorded in the office of the Recorder of   CLARK
State of   NEVADA                             County,
in Book   7   at Page   00100
as Document No.   960807   on the   7   day of   AUGUST   A.D. 19  96
Re-recorded No.   970207   as Document No.   970207         February   7   1497
day of   FEBRUARY   A.D. 19  97

Norwest Mortgage, Inc.

By
JAMES KUEHL
Its   ASSISTANT SECRETARY

[SEAL]

Signed the   3   day of   FEBRUARY   A.D. 19  97

State of MINNESOTA
County of HENNEPIN   } SS

On this   3   day of   FEBRUARY   A.D. 19  97   before me, a Notary Public,
personally appeared   JAMES KUEHL,
600 LASALLE AVE, Suite 1000 Mpls, MN 55402
ASSISTANT SECRETARY
to me known, who being duly sworn, did say that (he/she) is the
of Norwest Mortgage, Inc., a California corporation, formerly known as Norwest Mortgage, Inc., a Minnesota
corporation, by merger and name change, and that said said instrument was signed on behalf of said corporation.

Notary Public

SHARON L. KNEELAND
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2000

Drafted by & RETURN TO:
Norwest Mortgage, Inc.
600 LASALLE AVE, STE 1000
Minneapolis, MN 55402
Attn:   DOUG FILIPS

970207 015147

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
OLD REPUBLIC TITLE COMPANY OF NE

02-07-97  15:59   TML      2
OFFICIAL RECORDS
BOOK:  970207  INST:  01547

FEE:     8.00   RPTT:      .00

## REQUEST FOR NOTICE PURSUANT TO NEVADA REVISED STATUTES 107.090

Request is hereby made that a copy of any notice of default or notice of sale under the terms of that

certain Deed of Trust recorded ___AUGUST 7, 1996___ in Book __960807__

of Official Records, Clark County, Nevada as Document number____00700_____

executed by __SHIRLEY M. ROBINSON, AN UNMARRIED WOMAN,_____, Trustor

in which ___NORWEST MORTGAGE, INC., A CALIFORNIA CORPORATION is named as beneficiary

and ___STAN-SHAW CORPORATION, A CALIFORNIA CORPORATION____ is named as trustee,

be mailed to __NANCY PALEVAC_____

whose address is __867 NO. LAMB #25,_____

_____LAS VEGAS, NV. 89110_____

_____

"This instrument is delivered to the
Recorder's office as an accommoda-
tion by United Title of Nevada for
physical convenience only. It has not
been examined as to its validity ex-
ecution on its effect upon title, if any."

Dated: ___July 3, 1997___

STATE OF NEVADA
COUNTY OF ___CLARK___ } ss.

On ___July 7 1997___
before me, the undersigned, a Notary Public in and for
said County and State, personally appeared
___Barbara A. Shanks___

_____

_____

known to me to be the person___ described in and who
executed the foregoing instrument, who acknowledged
to me that ___he___ executed the same freely and vol-
untarily and for the uses and purposes therein men-
tioned.
WITNESS my hand and official seal.

(Seal)

_Barbara A. Shanks_
Notary Public in and for said County and State

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
ROSE DE STEPHANO
My Appointment Expires Dec. 19, 1997

DORN PRINTING INC.—(702) 734-0864

_Barbara A. Shanks_
Barbara A Shanks

T.O. ___97-06-0091KCB___

SPACE BELOW FOR RECORDERS USE ONLY

When Recorded Please Mail To: SOUTHWEST ESCROW CO.
3110 SO. VALLEY VIEW, #105
LAS VEGAS, NV. 89102

ACCOMMODATION ONLY

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
SOUTHWEST ESCROW CO
07-09-97  06:02   ESP
OFFICIAL RECORDS
BOOK: 970709 INST:  00287    1
FEE:   7.00 RPT:        .00

980730 02465

## REQUEST FOR NOTICE PURSUANT TO NEVADA REVISED STATUTES 107.090

Request is hereby made that a copy of any notice of default or notice of sale under the terms of that

certain Deed of Trust recorded _____ AUGUST 7, 1996 _____ in Book ___ 960807

of Official Records, Clark County, Nevada as Document number_____ 00700

executed by _____ SHIRLEY M. ROBINSON _____, Trustor

in which _____ NORWEST MORTGAGE _____ is named as beneficiary

and _____ STAN SHAW CORPORATION _____ is named as trustee,

be mailed to _____ SOUTHWEST ESCROW COMPANY

whose address is _____ 401 N. Buffalo Drive #205

_____ Las Vegas Nv. 89128

THIS IS BEING RECORDED AT THE
REQUEST OF UNITED TITLE AS AN
ACCOMMODATION ONLY WITH NO
LIABILITY.

*SHIRLEY M. ROBINSON*

ACCOMMODATION ONLY
WITHOUT LIABILITY

Dated: _____ July 29, 1998

STATE OF NEVADA }ss.
COUNTY OF_____ Clark

On _____ July 30, 1998
before me, the undersigned, a Notary Public in and for
said County and State, personally appeared
Shirley M. Robinson

T.O. 98-07-0060KCB

SPACE BELOW FOR RECORDERS USE ONLY

When Recorded Please Mail To: SOUTHWEST ESCROW COMPANY
401 N. Buffalo Drive #205
Las Vegas, Nv. 89128

Return to: United Title Company

known to me to be the person__ described in and who
executed the foregoing instrument, who acknowledged
to me that _S_he__ executed the same freely and vol-
untarily and for the uses and purposes therein men-
tioned.
WITNESS my hand and official seal.

(Seal) *Barbara A. Shanks*
Notary Public in and for said County and State

BARBARA A. SHANKS
NOTARY PUBLIC – STATE OF NEVADA
CLARK COUNTY
97-1114-1  My Appt. Expires February 13, 2001

COBB PRINTING INC — (702) 734-5554

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
SOUTHWEST ESCROW COMPANY
07-30-98  15:54  NEL      1
OFFICIAL RECORDS
BOOK:  980730 INST:  82465
FEE:  7.00 RPTT:  .00

Requested and Prepared by:

**First American Title**

When Recorded Mail To:
LOANSTAR MORTGAGEE SERVICES. L.L.C.
P.O. BOX 9013
ADDISON, TX 75001-9013

250 9408-WR      ②

20041208-0003144

Fee: $15.00
N/C Fee: $0.00

12/08/2004        13:23:32
T20040146123
Requestor:
FIRST AMERICAN TITLE COMPANY OF NEVADA

Frances Deane        JKA
Clark County Recorder   Pgs: 2

Space above this line for Recorder's use only

TS No.:   20049070801355

Loan No.:   0250436458

TSG No.:

## SUBSTITUTION OF TRUSTEE

WHEREAS,

**SHIRLEY M. ROBINSON, AN UNMARRIED WOMAN**

was the original Trustor, STAN-SHAW CORPORATION was the original Trustee, and NORWEST MORTGAGE, INC. was the original Beneficiary under that certain Deed of Trust Dated 8/5/1996 and recorded on 08/07/1996 as Instrument No. 00700, in Book 960807, and re-recorded 2/7/97 as Instrument #01546, book 970207, Parcel No. 162-07-710-008 of Official Records of CLARK County, Nevada; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitute, **LOANSTAR MORTGAGEE SERVICES, L.L.C.** WHOSE ADDRESS IS: P.O. BOX 9013, ADDISON, TX 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

LS129 - 10/97 (Crystal Report)

## SUBSTITUTION OF TRUSTEE – PAGE 2

TS No. :   20049070801355

Loan No. :   0250436458

NEVADA HOUSING DIVISION

_12/1/04_

Nancy Corbin, Deputy Administrator

State of Nevada )
                              §
County of Clark )

On   _12/1/04_   before   me,   **Andrea   J.   Golyer**   Notary   Public,   personally   appeared **Nancy   Corbin** personally   known   to   me   (or   proved   to   me   on   the   basis   of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

Notary Public-State Of Nevada
COUNTY OF CLARK
ANDREA J. GOLYER
My Appointment Expires
No. 98-3616-1        JULY 8, 2006

LS129 - 10/97 (Crystal Report)

2004120B-0003145

Fee: $16.00
N/C Fee: $0.00

12/08/2004          13:23:32
T20040146123
Requestor:
FIRST AMERICAN TITLE COMPANY OF NEVADA

Frances Deane          JKA
Clark County Recorder          Pgs: 3

Requested and Prepared by:

**First American Title**

When Recorded Mail To:
**LOANSTAR MORTGAGEE SERVICES, L.L.C.**
**P.O. BOX 9013**
**ADDISON, TX 75001-9013**

2509408-WR

Space above this line for Recorder's use only

| APN No.: | 162-07-710-008 |
|---|---|
| TS No. : | 20049070801355 |
| Loan No. : | 0250436458 |
| VA/FHA/PMI No.: | 332-2812469 |

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

#### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally thirty-five days after the recording of the said Notice of Default. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your benficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by you creditor.

[Page 1 of 3]

NV91 - 7/7/2004 (Crystal Report)

APN No.:      162-07-710-008
TS No. :      20049070801355
Loan No. :    0250436458
VA/FHA/PMI No.: 332-2812469

NOTICE OF DEFAULT AND
ELECTION TO SELL UNDER DEED OF TRUST

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO BANK, N.A.**
**c/o LOANSTAR MORTGAGEE SERVICES, L.L.C.**
**P.O. BOX 9013**
**ADDISON, TX  75001-9013**
**(972) 419-1167**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **LOANSTAR MORTGAGEE SERVICES, L.L.C.** As Agent for the current beneficiary under a Deed of Trust dated 8/5/1996, excuted by:

**SHIRLEY M. ROBINSON, AN UNMARRIED WOMAN**

as Trustor to secure certain obligations in favor of **NORWEST MORTGAGE, INC.** as Beneficiary, recorded 08/07/1996 as **Instrument No. 00700**, in **Book 960807**, and re-recorded 2/7/97 as Instrument #01546, book 970207 of Official Records in the Office of the Recorder of CLARK County, Nevada describing land therein as:

AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST
said obligations including ONE NOTE FOR THE ORIGINAL sum of **$48,350.00.**

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 07/01/2004 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

[Page 2 of 3]

NV91 - 7/7/2004 (Crystal Report)

| | | |
|---|---|---|
| APN No.: | 162-07-710-008 | NOTICE OF DEFAULT AND |
| TS No. : | 20049070801355 | ELECTION TO SELL UNDER DEED OF TRUST |
| Loan No. : | 0250436458 | |
| VA/FHA/PMI No.: | 332-2812469 | |

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: **December 1, 2004**

NEVADA HOUSING DIVISION

Nancy Corbin, Deputy Administrator

**LOANSTAR MORTGAGEE SERVICES, L.L.C. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

| State of Nevada | ) |
|---|---|
| | § |
| County of Clark | ) |

On _12/1/04_ before me, **Andrea J. Golyer** Notary Public, personally appeared **Nancy Corbin** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

> Notary Public-State Of Nevada
> COUNTY OF CLARK
> ANDREA J. GOLYER
> My Appointment Expires
> JULY 8, 2006
> No. 98-3616-1

[Page 3 of 3]

NV91 - 7/7/2004 (Crystal Report)



20060310-0001728

Fee: $16.00
N/C Fee: $0.00

03/10/2006          13:26:07
T20060043183

Requestor:
NATIONAL SEARCH SOLUTIONS

Frances Deane          DEZ
Clark County Recorder  Pgs: 3

Recording Requested By:
**FIRST AMERICAN TITLE INSURANCE COMPANY**

When Recorded Mail To:
**LOANSTAR MORTGAGEE SERVICES, L.L.C.
15000 SURVEYOR BLVD, SUITE 250
ADDISON, TEXAS 75001**

2509408-WR ③

| | | |
|---|---|---|
| TS No.: | 20049070801355 | Space above this line for Recorder's use only |
| FHA/VA/PMI No.: | 332-2812469 | |
| APN: | 162-07-710-008 | NEVADA |

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **08/05/1996**. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 3/30/2006 at 1:00 PM, **LOANSTAR MORTGAGEE SERVICES, L.L.C.**, as duly appointed Trustee under and pursuant to Deed of Trust recorded 8/7/1996, as Instrument No. **00700**, in book 960807, page , of Official records in the Office of the County Recorder of CLARK County, State of NEVADA. Executed by:

**SHIRLEY M. ROBINSON AN UNMARRIED WOMAN**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized, (Payable at time of sale in lawful money of the United States) **AT THE FRONT ENTRANCE TO NEVADA LEGAL NEWS, LOCATED AT 930 SO. FOURTH ST., LAS VEGAS, NV**

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# **162-07-710-008**.

The street address and other common designation, if any, of the real property described above is purported to be:

**3114 CHADFORD PLACE, LAS VEGAS, NV 89102**

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.**

TS No.:        **20049070801355**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$47,304.60**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

**THIS PROPERTY IS SOLD AS-IS, THE LENDER AND ITS ASSETS ARE UNABLE TO VALIDATE THE CONDITION, DEFECTS OR DISCLOSURE ISSUES OF SAID PROPERTY AND BUYER WAIVES THE DISCLOSURE REQUIREMENT UNDER NRS 113.130 BY PURCHASING THIS SALE AND SIGNING SAID RECEIPT.**

**First American Title Insurance Company**                              Date:  1/25/2006
**LoanStar Mortgagee Services, L.L.C.**
**3 First American Way**
**Santa Ana, CA 92707**

WENDY RANDALL

| |
|---|
| **LOANSTAR MORTGAGEE SERVICES, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.** |

**FOR TRUSTEE'S SALE INFORMATION
PLEASE CALL 702-651-6600**

State of  _California_  }
County of  _Orange_  }  §

On  _1-25-06_  before me  _Stephanie Ong_  Notary Public, personally appeared  **WENDY RANDALL**  personally known to me (or proved to me on the basis of satisfactory evidence) to be person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacty(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature:  _____  (Seal)
Notary Public In and for said County and State

| |
|---|
| Stephanie Ong |
| Commission # 1469216 |
| Notary Public - California |
| Orange County |
| My Comm. Expires Feb 9, 2008 |

TS No.: 20049070801355

**EXHIBIT "A"**

EXHIBIT "A"
THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF NEVADA,
COUNTY OF CLARK, CITY OF LAS VEGAS, AND IS DESCRIBED AS FOLLOWS:
LOT EIGHT (8) IN BLOCK TWO (2) OF BRADFORD PLACE UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE
IN BOOK 13 OF PLATS, PAGE 63, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
162-07-710-008

RE-RECORDED

960807.00700
970C07.01516

WHEN RECORDED MAIL TO:

NORWEST MORTGAGE, INC.
3601 MINNESOTA DRIVE
BLOOMINGTON, MN 55435

LOAN NUMBER: 7352889
BRANCH: LSV-E

96-29-7916

[17]

---

**State of Nevada**

[Space Above This Line For Recording Data]

# DEED OF TRUST

FHA Case No.

332-2812469-703

---

This Deed of Trust is being re-recorded to add the property address on the tax-exempt rider.

**THIS DEED OF TRUST** ("Security Instrument") is made on          AUGUST 05          , 1996     .
The Grantor is
SHIRLEY N. ROBINSON, AN UNMARRIED WOMAN

("Borrower"). The trustee is   STAN-SHAW CORPORATION, A CALIFORNIA CORPORATION
("Trustee"). The beneficiary is
NORWEST MORTGAGE, INC.,
A CALIFORNIA CORPORATION
which is organized and existing under the laws of               CALIFORNIA               , and whose
address is 405 S.W. 5TH STREET, DES MOINES, IA 50328                       ("Lender").
Borrower owes Lender the principal sum of
FORTY EIGHT THOUSAND THREE HUNDRED FIFTY AND NO/100
                                        Dollars (U.S. $      48,350.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on          AUGUST 01, 2026          . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in               CLARK               County, Nevada:
LOT EIGHT (8) IN BLOCK TWO (2) OF BRADFORD PLACE UNIT NO. 1, AS SHOWN
BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 63, IN THE OFFICE OF
THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

---

FHA Nevada Deed of Trust - 04/96                     Page 1 of 8                     D-5012-1 (04/96)



* 0 0 0 7 3 5 2 8 8 9 0 0 0 0 0 0 3 0 *



which has the address of

3114 CHADFORD PLACE
[Street]

LAS VEGAS                    NEVADA        89102
[City]                        [State]       [Zip Code]

("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

  (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

  (b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.



**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ Maximum amount authorized by HUD.

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider                  ☐ Adjustable Rate Rider          ☐ Growing Equity Rider
☒ Planned Unit Development Rider      ☐ Graduated Payment Rider        ☒ Other [Specify]
                                                                       Tax-Exempt Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
SHIRLEY M. ROBINSON                -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

(Sign Original Only)

STATE OF NEVADA,
County of            Clark
This instrument was acknowledged before me on        8-5-96            by

SHIRLEY M. ROBINSON

(Seal, if any)

My Commission Expires:  11-8-97

FHA Nevada Deed of Trust - 04/96                    Page 8 of 8                    D-5012-8 (04/96)



FHA Case No.
332-2812469-703

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this                    5TH                    day
of                    AUGUST                    , 19 96        , and is incorporated into and shall be deemed to amend
and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note to
NORWEST MORTGAGE, INC.,
A CALIFORNIA CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:
3114 CHADFORD PLACE
LAS VEGAS, NV  89102

                    [Property Address]

The Property is a part of a planned unit development ("PUD") known as

                    BRADFORD PLACE UNIT NO. 1
                    [Name of Planned Unit Development]

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree as follows:

A.      So long as the Owners' Association (or equivalent entity holding title to common areas and facilities),
        acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master"
        or "blanket" policy insuring the property located in the PUD, including all improvements now existing
        or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides
        insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire
        and other hazards included within the term "extended coverage," and loss by flood, to the extent required
        by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the
        monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance  on
        the Property, and (ii) Borrower's obligation under  Paragraph 4 of this Security Instrument to maintain
        hazard insurance  coverage on the Property is deemed satisfied to the extent that the required coverage is
        provided by the  Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in
        required hazard  insurance coverage and of any loss occurring from a hazard. In the event of a distribution
        of hazard  insurance proceeds in lieu of restoration or repair following a loss to the Property or to common
        areas  and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to
        Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity
        legally entitled thereto.

FHA Multistate PUD Rider   2/91
LOAN NUMBER:   7352889 LSV-E                    Page 1 of 2                    D-6163-1 (04/95)



*00073528890DKZ2AO*

960807.00700
970207.01546

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)    _____ (Seal)
SHIRLEY M. ROBINSON        -Borrower                                   -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                   -Borrower

FHA Multistate PUD Rider  2/91
LOAN NUMBER: 7352889  LSV-E                   Page 2 of 2                   D-6163-2 (04/95)

FHA Case No. 332-2812469-703

## TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is made this __5TH__ day of __AUGUST__, 19__96__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

NORWEST MORTGAGE, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

3114 CHADFORD PLACE, LAS VEGAS NEVADA 89102

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to amend Paragraph 9 of the Model Mortgage Form, entitled 'Grounds for Acceleration of Debt' by adding additional grounds for acceleration as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a) All or part of the Property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

    (i) Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

    (ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

    (iii) At an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

    (iv) Who has a gross family income in excess of the applicable percentage of applicable median family income as provided in Section 143(f) and (i)(2) of the Internal Revenue Code; or

(b) Borrower fails to occupy the property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider, or

(c) Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulation.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

_____ / Borrower
SHIRLEY M. ROBINSON

_____ Borrower

EXH-J(d)
Revised 8/15/96

Exhibit J(d)

Addendum for
FHA loans

RE-RECORDED

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
OLD REPUBLIC TITLE COMPANY OF NE
02-07-97  15:59   TM.        12
BOOK: 970207 OFFICIAL RECORDS
INST: 01546
FEE:    18.00  RPTT:        .00

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
OLD REPUBLIC TITLE COMPANY OF NE
08-07-96  10:03   D81        12
OFFICIAL RECORDS
BOOK: 960807  INST: 00700
FEE:    18.00  RPTT:        .00

980416-02065

**REQUEST FOR NOTICE PURSUANT TO NEVADA REVISED STATUTES 107.090**

Request is hereby made that a copy of any notice of default or notice of sale under the terms of that

certain Deed of Trust recorded_____ FEBRUARY 7, 1998 _____ in Book __970207_

of Official Records, Clark County, Nevada as Document number_____ 01546 _____

executed by _____ SHIRLEY M. ROBINSON _____ , Trustor

in which _____ NORWEST MORTGAGE INC. _____ is named as beneficiary

and _____ STAN-SHAW CORPORATION _____ is named as trustee.

be mailed to ____ DOUGLAS L. HARCLERODE, TRUSTEE AND NANCY PALEVAC

whose address is ____ C/O SOUTHWEST ESCROW COMPANY _____

_____ 401 N. Buffalo Drive #205 _____

_____ Las Vegas, Nv. 89128 _____

THIS IS BEING RECORDED AT THE
REQUEST OF UNITED TITLE AS AN
ACCOMMODATION ONLY WITH NO
LIABILITY.

Dated: ___ APRIL 14, 1998

*Shirley M. Robinson*
SHIRLEY M. ROBINSON

STATE OF NEVADA
COUNTY OF ____ Clark ____ } ss.

On____ APRIL 15, 1998

before me, the undersigned, a Notary Public in and for
said County and State, personally appeared____
Shirely M. Robinson
_____
_____

known to me to be the person___ described in and who
executed the foregoing instrument, who acknowledged
to me that _a hr___ executed the same freely and vol-
untarily and for the uses and purposes therein men-
tioned.
WITNESS my hand and official seal.

(Seal) _____
Notary Public in and for said County and State

OFFICIAL SEAL
**R. DE STEPHANO**
NOTARY PUBLIC - STATE OF NEVADA
CLARK COUNTY
97-4564-1   My Appt. Expires October 8, 2001

DORN PRINTING INC. —(702) 734-0664

T.O.____ 98-04-0028KCB

SPACE BELOW FOR RECORDERS USE ONLY

When Recorded Please Mail To: SOUTHWEST ESCROW COMPANY
401 N. Buffalo Drive #205
Las Vegas, Nv. 89128

ACCOMMODATION WITHOUT LIABILITY

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:

SOUTHWEST ESCROW
04-16-98   15:35   BGN      1
BOOK:   980416  OFFICIAL RECORDS  02065
        INST.
FEE:     7.00   RPTT:         .00

FORM B6A
(6/90)

In re ___SHIRLEY MAE ROBINSON_____          Case No _____
                    Debtor                                                          (if known)

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 3114 CHADFORD PLACE LAS VEGAS, NV 89102 SAME | Fee Simple | | 83,000.00 | 62,639.00 |

Total ▶  83,000.00

(Report also on Summary of Schedules)


EXHIBIT

Bankruptcy2005 ©1991-2005 New Hope Software, Inc. ver. 3.9.6-626 - 12245

## ** SECTION 362 INFORMATION SHEET **

Shirley Robinson
DEBTOR(S)

Chapter 13
Case No.: 05-12090-mkn

Wells Fargo Bank, N.A.
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 3114 Chadford Pl., Las Vegas NV 89102

NOTICE SERVED ON: Debtor(s) _____ x _____; Debtor (s) Counsel _____ x _____; Trustee _____ x _____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st Wells Fargo Bank, N.A. (PB$39,676.30) | 1st _____ |
| Total Encumbrances: $39,676.30 | 2nd _____ |
| APPRAISAL or OPINION as to VALUE: "Per attached Schedule "A" $83,000.00 | Total Encumbrances: $_____ APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $48,350.00 Interest Rate: 7.4299999999999997 Duration: 30 Year Payment Per Month: $ 430.99 Date of Default: November 1, 2008 Amount of Arrearages: $3,336.02 Date of Notice of Default: April 29, 2008 SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** SUBMITTED BY: _____ SIGNATURE: _____ | SPECIAL CIRCUMSTANCES: SUBMITTED BY: _____ SIGNATURE: _____ |

EXHIBIT